UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JONI D. FFRENCH, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-12-0291 |
| | § | |
| PRICEWATERHOUSECOOPERS | § | |
| CORPORATE FINANCE, LLC, et al., | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendants' Motion to Compel Arbitration and to Stay the Action Pending the Conclusion of the Arbitration ("Motion") (Doc. No. 4). Having considered the parties' filings, all responses thereto, and the applicable law, the Court finds that Defendants' Motion should be denied.

## I.      BACKGROUND

Plaintiff Joni Ffrench is a former employee of Defendant PricewaterhouseCoopers Corporate Finance LLC ("PwCCF"). (Original Petition, Doc. No. 1-2, ¶ 18.) She joined PwCCF in 1999, and assumed the role of Chief Compliance Officer ("CCO") in 2006. (*Id.* ¶¶ 19, 23.) Plaintiff was terminated in September 2009. (*Id.* ¶ 30.) Plaintiff asserts that her male counterparts were paid substantially more than she was, and that she was terminated in retaliation after she complained about the compensation disparities.

Plaintiff signed a Financial Industry Regulatory Authority ("FINRA") Form U-4 Uniform Application for Securities Industry Registration or Transfer upon joining PwCCF. This form contains an arbitration provision. When a registered employee is terminated, FINRA rules require the company to file a Uniform Termination Notice for Securities Industry Registration,

1

Form U-5, which requires the company to state the basis of the registered employee's termination. Plaintiff alleges that the Form U-5 filed by PwCCF on October 8, 2009 contained improper disparaging remarks toward Plaintiff. Thus, Plaintiff filed a claim for "Libel and Slander on Form U-5" with FINRA. (FINRA Dispute Resolution Tracking Form, Doc. No. 9-5, at 3.)

The parties agreed to hold the FINRA arbitration in Houston from October 25, 2011 through October 27, 2011. (Mot. at 6.) The parties conducted significant discovery, and exchanged pre-hearing briefs and witness lists. (*Id.* at 6–7.) On October 17, 2011, Plaintiff moved for a continuance of the arbitration hearing, providing three reasons for the request: (1) she desired to retain an additional expert witness; (2) the sudden unavailability of the securities expert; and (3) counsel's need to attend to a family medical matter. (*Id.* at 7–8.) PwCCF agreed to a continuance, solely on the basis of the personal matter of Plaintiff's attorney. (*Id.* at 8.) FINRA granted Plaintiff's request for a continuance, and FINRA rescheduled the hearing for August 7, 2012.

In February 2010, Plaintiff also filed a charge of sex discrimination and retaliation against Defendants with the Equal Employment Opportunity Commission (EEOC) and the Texas Workforce Commission Civil Rights Division. Plaintiff received her right to sue letter from the EEOC in September 2011. Plaintiff filed this lawsuit in state court in December, bringing gender discrimination and retaliation claims against PwCCF and its parent company, PricewaterhouseCoopers LLP ("PwC") under Title VII of the Civil Rights Act of 1964, the Equal Pay Act of 1963, and the Texas Labor Code. Defendants removed the case to this Court.

Defendants now move to compel arbitration and stay these proceedings.  They assert that Plaintiff's FINRA arbitration asserts the same claims as those at issue in this lawsuit, and thus that this case should be stayed until the arbitration is complete.

## II.     LEGAL STANDARD

A two step inquiry governs whether parties should be compelled to arbitrate.  *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004).  First, courts must determine whether the parties agreed to arbitrate the dispute.  *Id.*  The burden of establishing the existence of such an agreement is on the party seeking to compel arbitration.  *Henry v. Gonzalez*, 18 S.W.3d 684, 688 (Tex. App.—San Antonio 2000, pet. dism'd by agr.).  That party must establish, by a preponderance of the evidence, that such an agreement exists.  *Banks v. Mitsubishi Motors Credit of Am., Inc.*, 435 F.3d 538, 540 (5th Cir. 2005).  The determination of whether there exists a valid agreement to arbitrate is decided by reference to state law.  *Id.*

Once it is determined that such an agreement exists, the burden shifts to the party opposing arbitration to show that the agreement is not enforceable, or that the dispute does not come within the scope of the agreement.  In deciding this issue, the court must consider whether any federal statute or policy renders the claims non-arbitrable.  *Id.*

The Federal Arbitration Act provides for a mandatory stay of proceedings in federal district courts when an issue in the proceedings is referable to arbitration.  9 U.S.C. § 3. However, where all of a plaintiff's claims are arbitrable, the legal action may be dismissed.  *See, e.g.*, *Fedmet Corp. v. M/V Buyalyk,* 194 F.3d 674, 678 (5th Cir. 1999) (because all of the issues raised before the district court were arbitrable, dismissal of the case was not inappropriate); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (because "all issues

raised in this action are arbitrable and must be submitted to arbitration, retaining jurisdiction and staying the action will serve no purpose.").

Even if a mandatory stay under § 3 is not applicable, a court may exercise its discretion to stay litigation pending the outcome of arbitration, as a means of controlling and managing the docket. *See Hornbeck Offshore (1984) Corp. v. Coastal Carriers Corp.,* 981 F.2d 752, 755 (5th Cir. 1993) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 20 n.23 (1983)).  A district court's discretionary authority to issue a stay is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Ambraco, Inc. v. Bossclip B.V.,* 570 F.3d 233, 243 (5th Cir. 2009) (citing *Coastal (Bermuda) Ltd. v. E.W. Saybolt & Co.,* 761 F.2d 198, 204 n.6 (5th Cir. 1985).  "[T]he moving party bears a heavy burden to show why a stay should be granted absent statutory authorization, and a court should tailor its stay so as not to prejudice other litigants unduly." *Costal (Bermuda),* 761 F.2d at 204 n.6.

## III.   ANALYSIS

Plaintiff argues that Defendants' motion must be denied because there was never an agreement to submit her Title VII claims to arbitration.

Plaintiff does not dispute that she signed the Form U-4, which states, in relevant part:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of [FINRA] as may be amended from time to time, and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction.

(Form U-4, Sheinfeld Decl., Doc. No. 4-3, Ex. B., at 4 ¶ 5.)  However, under FINRA regulations, "[a] claim alleging employment discrimination, including sexual harassment, in violation of a statute, is not required to be arbitrated under the Code.  Such a claim may be arbitrated only if

the parties have agreed to arbitrate it, either before or after the dispute arose."  (FINRA Rule 13201, Doc. No. 9-1, at 12.)  *See also In re NEXT Financial Group, Inc.*, 271 S.W.3d 263, 268 (Tex. 2008) ("[S]tatutory employment discrimination and sexual harassment claims have been excluded from compelled arbitration under NASD[1] rules.")

As Plaintiff's Form U-4 does not show an agreement to arbitrate the discrimination claims, the Court must consider whether Plaintiff agreed to resolve these claims through arbitration with any additional action or agreement.  Defendants argue that Plaintiff "manifested her agreement to arbitrate her discrimination and retaliation claims by voluntarily commencing the FINRA arbitration and asserting those claims in that proceeding."  (Mot. at 11–12.)  Furthermore, Defendants note that Plaintiff executed a Submission Agreement that manifested her intent to "submit the present matter in controversy, as set forth in the attached statement of claim, answers, and all related cross-claims, counterclaims, and/or third party claims that may be asserted, to arbitration in accordance with the FINRA By-Laws, Rules, and Code of Arbitration Procedure."  (Submission Agreement and Electronic Signature, Sheinfeld Decl., Doc. No. 4-3, Ex. F, at 1.)

However, the Court does not agree that Plaintiff agreed to arbitrate her discrimination claims when she submitted her dispute to FINRA.  Rather, Plaintiff intended to submit only her defamation claim regarding Form U-5 to FINRA, as this dispute must be arbitrated.

The Submission Agreement quoted above cannot mean that Plaintiff must arbitrate every factually similar claim that she could have asserted.  This goes against the plain language of the rule, which states that she agrees to submit to arbitration her statement of claim, as well as related claims from Defendant PwCCF or other third parties, not her own "related" claims. (Submission Agreement and Electronic Signature, Sheinfeld Decl., Ex. F, at 1.)   This

---

[1] At the time, FINRA was known as the National Association of Securities Dealers ("NASD").

interpretation is also contrary to the FINRA regulation explicitly stating that discrimination claims need not be arbitrated.  (FINRA Rule 13201, Doc. No. 9-1, at 12.)   Other FINRA regulations contemplate situations where Plaintiff may file a statutory discrimination claim in court and related claims in arbitration.  (FINRA Rule 13803, Doc. No. 9-4, at 46–47 (allowing respondents to compel claimants to bring the related arbitration claims in the same court proceeding as the statutory discrimination claim, but not allowing them to combine related claims in arbitration).)  Additionally, this Submission Agreement is page five of a longer Claim Information Tracking Form.  In this form, the only information listed under "Section 3: Claims" is "Employment-Libel or Slander on Form U-5," further evidence of Plaintiff's intention to submit only her defamation claim regarding Form U-5 to FINRA.  (FINRA Dispute Resolution Claim Information Tracking Form, Doc. No. 9-5, at 3.)

Although Defendants are correct that Plaintiff's "Statement of Claim" (Sheinfeld Decl., Doc. No. 4-3, Ex. E) does not clearly express that her only claim in arbitration is the defamation claim, it also does not contain any statements contradicting that assertion in her Tracking Form. The gravamen of the Statement of Claim is the defamation in the U-5 form.  Information about her equal pay dispute with PwCCF and her alleged retaliatory termination is relevant to providing the arbitration panel with a background and also for determining whether the statements in the U-5 were defamatory or an accurate reflection of Plaintiff's job performance and the reason for her termination.  Furthermore, Plaintiff's intention to submit only her U-5 claim to the arbitrator is more apparent from her Pre-Hearing Brief (Sheinfeld Decl., Ex. J).  The brief is divided into six main sections: "Introduction," "Background," "PwC's Form U5 Filing," "Legal Argument," "Summary," and "Conclusion."  Discrimination is not given its own section comparable to the "PwC's Form U5 Filing" section, and is discussed only as "Background."  (*Id.*

at 3–4.)  The "Legal Argument" and "Summary" sections focus only on defamation, not on identifying or establishing any elements of statutory discrimination claims.

The composition of the arbitration panel lends further support to the Court's interpretation of Plaintiff's intent to assert only the U-5 claim.  For cases not involving a statutory discrimination claim, a three-person panel, such as the one in the pending arbitration, should consist of one non-public arbitrator and two public arbitrators.  (FINRA Rule 13402(b), Doc. No. 9-2, at 26.)  This is true of Plaintiff's panel.  (*See* Reply, Doc. No. 13, at 5 n.2.)[2] Statutory discrimination claims, on the other hand, require three public arbitrators, and this requirement can be waived only in writing.  (FINRA Rule 13802(c)(2), Doc. No. 9-4, at 45.)  Thi requirement can be waived only in writing (*id.*), which the parties did not do in this case. Defendants' contention that Plaintiff should have objected to the composition of the panel earlier is unavailing, as Plaintiff would have no need to object if she believed she was arbitrating only her defamation claim.

Accordingly, the Court finds that Plaintiff did not agree to arbitrate her statutory employment discrimination claims.  Even so, Defendants argue, "the facts and issues underlying the claims asserted in the two proceedings are so interrelated that the Court should nonetheless exercise its discretion to stay this action pending completion of the scheduled FINRA arbitration hearing."  (Reply at 8.)  The Court declines to exercise its discretion in this way.  As noted above, FINRA regulations expressly provide plaintiffs with the opportunity to litigate their claims in court.  The Court is not bound by any factual determinations of the arbitration panel regarding the defamatory nature or the truth of the statements on the Form U-5.  Also, according to the regulations cited by Plaintiff, Defendants also have the option to consolidate the arbitration

---

[2] On former non-public arbitrator who was a member of the panel withdrew in August 2011, and was replaced with another non-public arbitrator. (Reply at 5 n.2.)

claims in this Court if they desire to avoid litigating the underlying factual issues in two different forums.  (FINRA Rule 13803, Doc. No. 9-4, at 46–47.)  The statutory discrimination claims are "easily severable," and thus the Court should not stay those claims.  *See Coastal (Bermuda)*, 761 F.2d at 204 n.6 ("'[I]f some claims are arbitrable and others are not and they are easily severable, . . . the court should stay proceedings [only] as to those claims which are arbitrable.'" (quoting *Wick v. Atlantic Marine, Inc.,* 605 F.2d 166, 168 (5th Cir. 1979))).

### IV.    CONCLUSION

Based on the foregoing, Defendants' Motion is **DENIED**.


**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 24th day of May, 2012.


_____

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE